## STAFFING VENDOR AGREEMENT

IT IS HEREBY AGREED by and between STAFFING FIRM ("STAFFING FIRM"), C+P Staffing Group LLC and Lorry Dollar County ("CLIENT"),

WHEREAS, STAFFING FIRM is engaged in the business of assigning its employees to perform services for clients, and providing related management and human resource services; and

WHEREAS, CLIENT desires to engage STAFFING FIRM to provide such services;

NOW, THEREFORE, in consideration of the promises, and of the mutual covenants hereinafter set forth, and intending to be legally bound hereby, the parties hereto agree as follows:

## DEFINITIONS

1. For purposes of this Agreement, "CLIENT" refers to and includes the entity named above and its parents, subsidiaries, affiliates, and successors. This includes CLIENT's facilities located at: [list client locations]

2. For purposes of this Agreement, "STAFFING FIRM" refers to and means C+P Staffing Group, and its parents, subsidiaries, affiliates, and successors.

## DUTIES OF STAFFING FIRM

3. STAFFING FIRM shall provide to CLIENT the services of its employees ("Assigned Employees") as requested by CLIENT. CLIENT shall use the services of STAFFING FIRM as a provider of Assigned Employees for the job titles set forth on Exhibit A for CLIENT. STAFFING FIRM shall manage the provision of services to CLIENT in accordance with the provisions of this Agreement.

4. Responsibilities of STAFFING FIRM: STAFFING FIRM agrees to assume full responsibility for paying, withholding, and transmitting payroll taxes; making unemployment contributions; and handling unemployment and workers' compensation claims involving Assigned Employees with respect to compensation that STAFFING FIRM has agreed to pay. Assigned Employees shall not be entitled to holidays, vacations, disability, insurance, pensions or retirement plans, or any other benefits offered or provided by CLIENT to its direct employees. STAFFING FIRM shall require all Assigned Employees to sign an agreement, annexed hereto as Exhibit B, acknowledging their understanding that they are not entitled to CLIENT benefits offered to its direct employees and waiving any right that may be deemed to exist or that may come into existence with respect to such benefits.

5. Client Executive: STAFFING FIRM shall designate and provide at no charge to CLIENT a STAFFING FIRM official to serve as liaison with CLIENT in overseeing the implementation of this Agreement.

6.[OPTIONAL] On-site coordinator: STAFFING FIRM may provide to CLIENT, if needed, a STAFFING FIRM employee to serve as On-site coordinator to CLIENT who will process all Assigned Employee job requests, coordinate and oversee Assigned Employees at the CLIENT facility, and otherwise fulfill the responsibilities of On-site coordinator Job Description set forth

# EXHIBIT C

in Exhibit C. To the extent necessary, On-site coordinator shall work out of office space provided by CLIENT on CLIENT's premises. A fully trained backup will be available to replace the Coordinator when that Coordinator is temporarily absent.

7. Selection and Background Checks: STAFFING FIRM shall recruit, interview, test, screen, and ensure compliance with legally required pre-employment obligations for all Assigned Employees to be assigned to CLIENT's facilities prior to their assignment at CLIENT.

8. [OPTIONAL] Other Background Checks: Possible other checks include criminal conviction record, education, drug testing, credit searches, etc.

9. [OPTIONAL] Industry-specific Checks: Possibilities include security clearances, license/permit verifications, fingerprinting for financial services positions, etc.

10. Reports: STAFFING FIRM shall produce such reports as CLIENT may reasonably request pertaining to Assigned Employees. STAFFING FIRM shall furnish to CLIENT any other reports in such formats and at such intervals as CLIENT may reasonably request.

11. ~~[OPTIONAL]~~ *Included* Insurance: [identify specific insurance coverages and amounts required to meet specific client requirements. For example:
General Liability
Workers' Compensation        Statutory Amount] *As Agreed*

12. [OPTIONAL] Other Obligations: [identify specific obligations as required by client.]

DUTIES OF CLIENT

13. Payment for Services:

[OPTION A]

a. STAFFING FIRM will invoice CLIENT for services provided in accordance with this Agreement on a ~~weekly~~ *Weekly* basis. Payment shall be due upon receipt of the invoice. Invoices shall be accompanied by the pertinent timesheets. CLIENT's signature on STAFFING FIRM's timesheets certifies that the hours shown are correct and that the work was performed to CLIENT's satisfaction and authorizes STAFFING FIRM to bill CLIENT for the hours worked by the named Assigned Employee.

b. STAFFING FIRM's bill rates by job categories are attached hereto as Exhibit A, which is incorporated by reference herein. In the event a portion of any invoice is disputed, the undisputed portion shall be paid. CLIENT acknowledges and agrees that in the event an Assigned Employee works more than forty (40) hours in any work week for CLIENT, that Assigned Employee is entitled to overtime compensation as provided by law and CLIENT agrees to an increase in the bill rate to reflect such additional compensation plus applicable markup.

CLIENT agrees to pay Net Upon Receipt of invoice, and to pay late charges on any unpaid balances after ___ days from the date of receipt at the rate of ___ % per month (Annual Percentage Rate of ___%) or the maximum legal rate, whichever is higher.

[OPTION B]

[Electronic invoicing/billing arrangement]

14. Government Contract: CLIENT agrees to notify STAFFING FIRM immediately whenever any Assigned Employee performs any work under a Government Contract, and agrees to pay to STAFFING FIRM a price differential to reflect the higher wages that may be due any such employee by reason of any Government Contract law or contract specifications.

15. Conversion Fees:

[OPTION A]

STAFFING FIRM shall waive its right or claim to any placement fee, conversion fee, or liquidated damages in the event CLIENT hires directly on to its own payroll or engages as an independent contractor any Assigned Employee at any time after such Assigned Employee has worked at CLIENT's facility for at least ___ days in any one calendar year, with no break in service of more than ___ business days, provided that CLIENT has paid to STAFFING FIRM all invoiced amounts for such Assigned Employee. In the event that CLIENT hires or engages as an independent contractor any Assigned Employee prior to such ___ day period, CLIENT shall pay to STAFFING FIRM an amount equal to what CLIENT would have paid STAFFING FIRM had such Assigned Employee worked at CLIENT through STAFFING FIRM for ___ business days at STAFFING FIRM's then current rates.

[OPTION B]

STAFFING FIRM shall receive a placement fee in the amount of $_____ for every Assigned Employee CLIENT hires directly on to its own payroll or engages as an independent contractor.

16. No Payroll Transfer: CLIENT agrees not to directly or indirectly cause or permit any Assigned Employee assigned to CLIENT by STAFFING FIRM pursuant to this Agreement to transfer to another entity's payroll, or to perform services for CLIENT while on the payroll of any person or firm other than STAFFING FIRM during the term of this Agreement and for a period of ___ days after such Assigned Employee's assignment at CLIENT ends. If CLIENT violates this paragraph, then CLIENT shall pay to STAFFING FIRM a fee in the amount of ___% of the Assigned Employee's annualized compensation, or $_____, whichever figure is higher.

17. No Staff Hires: CLIENT and STAFFING FIRM agree not to directly or indirectly employ or engage as an independent contractor any staff employee of the other party during the term of this Agreement and for a period of __1 year__ thereafter without the prior written consent of the other party. Any party violating this paragraph shall pay to the other party a fee in the amount of 15 % of the employee's annualized compensation.

18. Limitations:

Staffing Vendor Agreement        Page 3 of 15        American Staffing Association (5/00)

a. CLIENT agrees that it will not entrust Assigned Employees with unattended premises, cash, checks, keys, credit cards, merchandise, confidential or trade secret information, negotiable instruments, or other valuables without the express prior written permission of STAFFING FIRM and then only under STAFFING FIRM's direct supervision and control.

b. CLIENT will not request or permit any Assigned Employee to use any vehicle, regardless of ownership, in connection with the performance of services for CLIENT.

## GUARANTEE OF RATES

19. STAFFING FIRM guarantees the bill rates as set forth in Exhibit A through _Duration of project_ unless there is an increase in payroll taxes. The parties agree to review rates in _3_ months and adjust rates no later than _as agreed_ unless the parties agree otherwise in order to facilitate recruitment and retention of Assigned Employees.

## INDEPENDENT CONTRACTOR

20. The services which STAFFING FIRM shall render under this Agreement shall be as an independent contractor with respect to each other and to CLIENT. Nothing contained in this Agreement shall be construed to create the relationship of principal and agent, or employer and employee, between STAFFING FIRM and CLIENT.

21. STAFFING FIRM shall provide workers' compensation insurance coverage for Assigned Employees (except that STAFFING FIRM's workers' compensation liability may be limited in certain cases as provided in paragraphs 18. and 45.f.). The parties agree to immediately notify each other of any injury or accidents or any claim for workers' compensation benefits involving Assigned Employees assigned to CLIENT's facility.

## OSHA COMPLIANCE

22. Because CLIENT controls the facilities in which Assigned Employees work, it is agreed that CLIENT is primarily responsible for compliance with the Occupational Safety and Health Act and comparable state laws and regulations thereunder, to the extent those laws apply to Assigned Employees assigned to CLIENT's facility, except as may be otherwise agreed in writing signed by the parties hereto. Any such agreement shall be included as an addendum to this Agreement.

## EEO COMPLIANCE

23. CLIENT and STAFFING FIRM affirm and agree that they are equal employment opportunity employers and are in full compliance with any and all applicable anti-discrimination laws, rules, and regulations. CLIENT and STAFFING FIRM agree not to harass, discriminate against, or retaliate against any employee of the other because of his or her race, national origin, age, sex, religion, disability, marital status, or other category protected by law; nor shall either party cause or request the other party to engage in such discrimination, harassment, or retaliation. In the event of any complaint of unlawful discrimination, harassment, or retaliation by any Assigned Employee, CLIENT and STAFFING FIRM agree to cooperate in the prompt investigation and resolution of such complaint.

## FMLA COMPLIANCE

24.     CLIENT and STAFFING FIRM agree that for purposes of all statutory and regulatory requirements for employee leaves of absence, including the Family and Medical Leave Act and any similar state or local law, CLIENT and STAFFING FIRM shall cooperate in compliance with any such requirements.

## RIGHT TO AUDIT AND CONFIRM COMPLIANCE

25.     Upon reasonable written notice to STAFFING FIRM, CLIENT may inspect STAFFING FIRM's records to verify STAFFING FIRM's compliance with this Agreement.

## CONFIDENTIALITY

26.     CLIENT's Confidential Information: STAFFING FIRM acknowledges that it or its Assigned Employees may be given access to or acquire information which is proprietary to or confidential to CLIENT or its affiliated companies and their clients and customers. Any and all such information obtained by STAFFING FIRM shall be deemed to be confidential and proprietary information. STAFFING FIRM agrees to hold such information in strict confidence and not to disclose such information to third parties or to use such information for any purposes whatsoever other than the providing of services to CLIENT. STAFFING FIRM agrees to direct Assigned Employees to keep such information confidential, and to require Assigned Employees to enter into Confidentiality Agreements in the form annexed hereto as Exhibit D before being assigned to CLIENT.

27.     STAFFING FIRM's Confidential Information: CLIENT acknowledges that during STAFFING FIRM's performance under this Agreement, CLIENT may be given access to or acquire Confidential Information of STAFFING FIRM (as defined below), all of which provides STAFFING FIRM with a competitive advantage and none of which is readily available. CLIENT agrees that during the term of this Agreement and any time thereafter it will not use or disclose to any person or company (except under the authority of STAFFING FIRM or if ordered to do so by a Court of competent jurisdiction) any Confidential Information obtained during the term of this Agreement for any reason or purpose. CLIENT also agrees that it will use due care and diligence to prevent any unauthorized use or disclosure of such information. As used herein, STAFFING FIRM's "Confidential Information" means: all information regarding STAFFING FIRM's Assigned and Staff Employees, including but not limited to their names, home addresses, telephone numbers, skills, qualifications, evaluations, availability, record of assignments, and related information.

## ASSIGNMENT OF COPYRIGHTS AND PATENTS TO CLIENT

28.     Any and all discoveries and/or inventions (which shall include improvements and modifications) relating to work performed by Assigned Employees, or relating to matters disclosed to Assigned Employees in connection with work to be performed, or suggested by such matters, whether or not patentable, which discoveries and/or inventions are made or conceived by Assigned Employees, solely or jointly with others, during the term of any assignment (regardless of whether conceived or developed during working hours) or during a period of one (1) year thereafter, shall be the property of CLIENT as "work made for hire" to the extent provided by sections 101 and 201(b) of the Copyright Act, 17 U.S.C.

101 *et seq*, and such discoveries and/or inventions shall be promptly disclosed to CLIENT. CLIENT shall have the right to file and prosecute, at its own expense, all patent applications, whether U.S. or foreign, on said discoveries and/or inventions. Assigned Employees shall, during any assignment with CLIENT or any time thereafter, provide to CLIENT all documents, information, and assistance requested for the filing or prosecution of any such patent application, for the preparation, prosecution, or defense of any legal action or application pertaining to such discoveries and/or inventions, and for the assignment or conveyance to CLIENT of all right, title, and interest in and to such discoveries and/or inventions, patent applications, and letters patent issuing thereon. All Assigned Employees shall sign an agreement, attached hereto as Exhibit E, confirming the provisions contained in this paragraph 28.

## COOPERATION

29. The parties agree to cooperate fully and to provide assistance to the other party in the investigation and resolution of any complaints, claims, actions, or proceedings which may be brought by or involve any of the Assigned Employees.

## TERM AND TERMINATION

30. a. This Agreement shall be for an initial term of ~~Duration of the~~ from the effective date of this Agreement, determined by the later date of signature of the parties. This Agreement shall be automatically renewed for successive one-year terms unless modified or terminated in accordance with the provisions of this Agreement. The parties agree to waive any notice prior to automatic renewal of this Agreement that may be required by state law.

    b. This Agreement may be terminated by either party upon 30 days' written notice to the

some of the Assigned Employees continue to work at CLIENT's facilities, CLIENT shall have the following options:

    a.    To pay STAFFING FIRM as a conversion fee (1) $ 1500.00 for each such Assigned Employee then assigned to CLIENT (or who was assigned to CLIENT during the preceding 90 days) who is engaged by CLIENT as an independent contractor or hired directly by CLIENT, and (2) $ 1500.00 for each such Assigned Employee who is transferred to or placed on the payroll of any other firm or person and who continues to perform services for CLIENT or at CLIENT's facility; or

    b.    To continue to pay STAFFING FIRM for such Assigned Employee's services at STAFFING FIRM's billing rate in effect at the time of the termination of the Agreement for any services performed by such Assigned Employee for a one-year period following the cancellation of this Agreement.

32.    CLIENT shall notify STAFFING FIRM which of the options in paragraph 31 it elects, in writing, at least no more than five (5) days prior to the date it intends to terminate this Agreement and to make such payments as may be required as soon as practicable thereafter, but in no event less than ten (10) days from the date the Agreement is terminated. If CLIENT does not make the election within such five-day (5-day) period, paragraph 31(a) will apply.

## MISCELLANEOUS

33.    **Survival of Certain Provisions:** Those provisions of this Agreement which by their terms extend beyond the termination or non-renewal of this Agreement shall remain in full force and effect and survive such termination or non-renewal.

34.    **Amendments:** No provision of this Agreement may be amended or waived unless such amendment or waiver is agreed to in writing signed by the parties.

35.    **Severability:** Each provision of this Agreement shall be considered severable such that if any one provision or clause conflicts with existing or future applicable law, or may not be given full effect because of such law, this shall not affect any other provision which can be given effect without the conflicting provision or clause.

36.    **Complete Agreement:** This Agreement, the exhibits attached hereto, and the provisions on the STAFFING FIRM Timesheet Agreement, contain the entire understanding between the parties hereto, and supersede all prior agreements and understandings relating to the subject matter hereof.

37.    **Successors and Assigns:** The provisions of this Agreement shall inure to the benefit of and be binding upon the parties and their respective representatives, successors, and assigns.

38.    **Headings:** The headings of the paragraphs of this Agreement are inserted solely for the convenience of reference. They shall in no way define, limit, extend, or aid in the construction of the scope, extent, or intent of this Agreement.

39. Waiver: The failure of a party to enforce the provisions of this Agreement shall not be construed as a waiver of any provision or the right of such party thereafter to enforce each and every provision of this Agreement.

40. Transferability: CLIENT shall not transfer or assign this Agreement without the written consent of STAFFING FIRM.

41. Ambiguities: The rule of construction that ambiguities in an agreement are to be construed against the drafter shall not be invoked or applied in any dispute regarding the meaning or interpretation of any provision of this Agreement.

REMEDIES

42. Arbitration

    a. Any controversy or dispute between the parties, whether arising out of or in connection with this Agreement or otherwise, shall be resolved in an arbitration under the Federal Arbitration Act and before the American Arbitration Association (AAA) in accordance with AAA's then obtaining Commercial Arbitration Rules at the AAA location closest to STAFFING FIRM's office. The administrative cost of the arbitration and the arbitrator's fee shall be shared equally by the parties.

    b. In such arbitration, the arbitrator shall have no authority or power to amend, modify, or in any other way change any of the terms of this Agreement. All decisions of such arbitrator shall be final and binding upon both parties. The prevailing party in such Arbitration as determined by the arbitrator in his or her decision shall be awarded an amount equal to its reasonable attorney's fees incurred in connection with such arbitration, in addition to what other relief may be awarded.

    c. Judgment upon any award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

43. Consent to Injunctive Relief: CLIENT acknowledges that STAFFING FIRM will suffer irreparable damage in the event CLIENT violates or threatens to violate the Agreement, and agrees that in the event of such violation or threatened violation, STAFFING FIRM shall be entitled, in addition to its other remedies, to injunctive relief to restrain such violation(s) by CLIENT and others acting in concert or participation with CLIENT, without the necessity of an injunction bond, pending the outcome of the arbitration as provided in paragraph 42 above and to recover its reasonable attorney's fees incurred in connection with any such injunction proceeding.

44. Indemnifications:

    a. To the extent permitted by law, and except for claims, losses, and liabilities expressly disclaimed by STAFFING FIRM in paragraph 45 below, STAFFING FIRM agrees to defend, indemnify, and hold CLIENT harmless of and from any and all claims or losses that CLIENT actually incurs (including reasonable attorney's fees) proximately caused by the fault, negligence, gross negligence, or recklessness of STAFFING FIRM, or STAFFING FIRM's officers, employees, or authorized agents, or which arise from STAFFING FIRM's breach of this Agreement.

b. To the extent permitted by law, CLIENT agrees to defend, indemnify, and hold STAFFING FIRM harmless against any and all claims, losses, and liabilities that STAFFING FIRM incurs (including reasonable attorney's fees agreed upon by CLIENT) that are proximately caused by the fault, negligence, gross negligence, or recklessness of CLIENT, or CLIENT's officers, employees, or authorized agents, that arise from CLIENT's breach of this Agreement, that arise from risks inherent in CLIENT's business, or that are expressly disclaimed by STAFFING FIRM in paragraph 45.

c. The parties agree that this paragraph 44 is the complete agreement between them with respect to any possible indemnification claim, and waive their right to assert any common-law indemnification or contribution claim against the other.

d. As a condition precedent to indemnification hereunder, the parties each agree to inform the other within 7 business days of its receipt of any claim, demand, or notice for which indemnification hereunder may be sought, and to cooperate in the investigation and defense of any such claim, demand, or notice.

45. Disclaimer of STAFFING FIRM Liability: STAFFING FIRM expressly disclaims liability for any claim, loss, or liability of any kind whatsoever resulting from:

a. CLIENT's failure to supervise, control, or safeguard premises, processes, or systems; or, without STAFFING FIRM's express prior written approval, entrusting Assigned Employees with unattended premises, cash, checks, keys, credit cards, merchandise, confidential or trade secret information, negotiable instruments, or other valuables.

b. CLIENT requesting or permitting Assigned Employees to use any vehicle, regardless of ownership, in connection with the performance of services for CLIENT unless STAFFING FIRM has given its express prior approval in writing.

c. Claims by Assigned Employees for benefits, damages, contributions, or penalties under any employee benefit plan, fringe benefit plan, or personnel policy sponsored and maintained by CLIENT, whether or not CLIENT's plans exclude Assigned Employees from coverage.

d. Promises of increased compensation made by CLIENT to Assigned Employees.

e. Claims by any person relating to any CLIENT product or service.

f. CLIENT's making substantial changes in the Assigned Employee's job duties or risks without STAFFING FIRM's prior written approval.

g. Claims by any person based on allegations that CLIENT's business activities damaged the environment.

h. The conduct of CLIENT's officers, employees, and agents.

i. Failure by CLIENT to provide Assigned Employees with a safe worksite or to provide information, training, and safety equipment with respect to any hazardous substances or conditions to which they may be exposed at the worksite, whether or not required by law.

j.  Acts or omissions of any Assigned Employee in the furtherance of CLIENT's particular business, except for those that could occur on any assignment to any type of client and except to the extent that such claim, loss, or liability is caused by STAFFING FIRM's failure to properly perform its screening, selection, assignment, or other contractual duties with respect to the Assigned Employee.

k.  Claims for special, indirect, consequential, punitive, or lost profit damages.

46.  Choice of Law: This agreement shall be governed by and construed in accordance with the laws of the State of _Alabama_, without reference to any conflicts of law principles thereof.

IN WITNESS WHEREOF, this Agreement has been duly executed by STAFFING FIRM and CLIENT on the dates set forth below.

**CLIENT**

_____
Signature

_____
Printed Name

_____
Date

**STAFFING FIRM**

_Patricia Hooks_
Signature

_PATRICIA HOOKS_
Printed Name

_PRESIDENT_
Title

_01/01/11_
Date

EXHIBIT A

Staffing Vendor Agreement         Page 10 of 15         American Staffing Association (5/00)

STAFFING FIRM'S PREFERRED RATE SCHEDULE FOR CLIENT
GUARANTEED THROUGH <u>Duration of Project</u>

| JOB TITLE | SHIFT | BILL RATE |
|---|---|---|

see email

EXHIBIT B

Staffing Vendor Agreement      Page 11 of 15      American Staffing Association (5/00)

Job Orders and Assignments

Take job orders from those individuals designated by CLIENT.
Notify CLIENT departments with names of Assigned Employees for assignments.
Arrange for replacements when necessary.

Assigned Employees

Oversee interviewing, testing, and reference checking.
Orient new Assigned Employees, administering all applicable forms.
Handle complaints or problems relating to Assigned Employees, counseling Assigned Employees as necessary.
Conduct performance evaluation of all Assigned Employees.
Process timesheets and paychecks.
Distribute paychecks.

j.  Acts or omissions of any Assigned Employee in the furtherance of CLIENT's particular business, except for those that could occur on any assignment to any type of client and except to the extent that such claim, loss, or liability is caused by STAFFING FIRM's failure to properly perform its screening, selection, assignment, or other contractual duties with respect to the Assigned Employee.

k.  Claims for special, indirect, consequential, punitive, or lost profit damages.

16  Choice of Law. This agreement shall be governed by and construed in accordance with the laws of the State of Alabama, without reference to any conflicts of law principles thereof.

IN WITNESS WHEREOF, this Agreement has been duly executed by STAFFING FIRM and CLIENT on the dates set forth below.

**CLIENT**

_____
Signature

L. Dallas
Printed Name

3/16/11
Date

~~[struck through]~~

Duration of project refers to:
KAFB Indoor Small Arms Firing Range Concrete install
located at: Biloxi, MS

**STAFFING FIRM**

Patricia Hoops
Signature

PATRICIA HOOPS
Printed Name

PRESIDENT
Title

01/01/11
Date

EXHIBIT A

Staffing Vendor Agreement            Page 10 of 15            American Staffing Association (5/00)